IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY VOGT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RUTGERS UNIVERSITY HEALTH DEPARTMENT FOR THE DEPARTMENT OF CORRECTIONS,<br><br>　　　　Defendant. | Civil Action<br>No. 15-3056 (AET-DEA)<br><br>**OPINION** |

APPEARANCES:

Corey Vogt, Plaintiff Pro Se
#676974/885841C
Bayside State Prison
4293 Route 47
Leesburg, New Jersey 08327

RECEIVED

JAN 29 2016

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

**THOMPSON, District Judge:**

**I.　INTRODUCTION**

　　Before the Court is Plaintiff Corey Vogt's ("Plaintiff"), motion for leave to file an amended complaint. (Docket Entry 10). By Order dated August 24, 2015, this Court dismissed Plaintiff's original complaint for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii). (Docket Entry 8). The Court also granted leave to file a proposed amended complaint within 30 days. (Docket Entry 8). Plaintiff submitted a proposed amended complaint on September 21, 2015. (Amended Complaint, Docket Entry 10). For the reasons

set forth below, the motion will be granted, and the Clerk of the Court shall file the amended complaint. The amended complaint shall be dismissed in part and shall proceed in part.

## II. BACKGROUND

Plaintiff brings this civil rights action against Defendants Rutgers University Health Department for the Department of Corrections ("Rutgers"), Dr. Briglia, Dr. Pomerantz, the Central Reception and Assignment Facility ("CRAF") medical staff, and the Bayside State Prison ("BSP") medical staff. The following factual allegations are taken from the amended complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth of Plaintiff's allegations.

Plaintiff was admitted to CRAF on or about January 9, 2015. (Amended Complaint at 2). The attending medical staff, who were employed by Rutgers University and acting on behalf of the Department of Corrections, evaluated Plaintiff at the time of his admission. (*Ibid.*). Plaintiff informed the staff members of his "pre-existing medical conditions" that were documented in his records. (*Ibid.*). He also had a "recent [trauma]" which necessitated the use of a cane to walk. (*Ibid.*). He states that he required unidentified medication in order to relieve pain and to allow "daily mobility[,]" but the medical staff would not

provide it even after they were informed he could not use the stairs due to the pain. (*Ibid.*).

Plaintiff states that he filed a grievance with the American Disability Association coordinator, who "[enforced] a move to the second floor due to [his] disability." (*Ibid.*). He filed other request forms asking the medical staff to obtain his medical records from his orthopedic specialist, Dr. Miller. (*Ibid.*). The staff received the records, which allegedly contained MRI scans confirming Plaintiff's condition and a prescription for Norco,[1] but they continued to refuse to provide the medication. (*Ibid.*). As a result, Plaintiff was unable to perform his normal activities. (*Ibid.*).

Plaintiff was transferred to Southern State Correctional Facility ("SSCF") on or about March 13, 2015. (*Id.* at 3). Upon his arrival at SSCF, he informed Dr. Pomerantz, a Rutgers employee, of his mobility issues, including limitations on "walking more than 3 minutes, bending over, [tying] shoes, showering, sitting for more than 10 minutes at a time and standing more than five minutes at a time." (*Ibid.*). Dr. Pomerantz transferred Plaintiff to the medical wing of SSCF, but did not provide Plaintiff with his medication. (*Ibid.*).

---

[1] A combination of acetaminophen and hydrocodone, a narcotic pain medication, that is used to relieve moderate to severe pain. *Norco*, http://www.drugs.com/norco.html (last visited January 28, 2016).

3

Plaintiff told Dr. Pomerantz that if he did not provide Plaintiff with his medication, he "would be forced to contact . . . the medical services [patient] advocate ombudsman." (*Ibid.*). He was thereafter "thrown out" of Dr. Pomerantz's office, and Dr. Pomerantz filed an intuitional charge against Plaintiff for "faking an injury." (*Ibid.*). Plaintiff explained the entire situation to the disciplinary hearing officer, who instructed Plaintiff not to "go to any recreation movements," but did not sanction Plaintiff. (*Ibid.*). Dr. Pomerantz instructed the medical staff to seize Plaintiff's cane, leaving Plaintiff unable to walk or stand without extreme pain. Plaintiff submitted a grievance form about the situation, and he was transferred to BSP two days later. (*Ibid.*).

Plaintiff informed the BSP medical staff, whom Plaintiff alleges were employed by Rutgers, of his conditions, but he was again denied "proper pain management." (*Id.* at 4). He had knee surgery on March 21, 2015, after which Dr. Miller ordered hydrocodone for Plaintiff. (*Ibid.*). Dr. Pomerantz, however, provided Plaintiff with Tylenol 3.[2] (*Ibid.*). Plaintiff states he was unable to leave his bed for three days. (*Ibid.*). He was

---

[2] The Court presumes Plaintiff is referring to Tylenol with Codeine 3, which is "a combination medicine used to relieve moderate to severe pain." *Tylenol with Codeine #3*, http://www.drugs.com/mtm/tylenol-with-codeine-3.html (last visited January 28, 2016).

4

thereafter placed on the second floor, forcing him to use the stairs all day in spite of the pain it caused. (*Ibid.*). Dr. Miller had also ordered Plaintiff to begin physical therapy within two weeks, but it took a month after Plaintiff filed an inmate grievance for it to start. (*Ibid.*). Once he began physical therapy, he was unable to fully participate in the program because of the "improper pain management." (*Ibid.*). The BSP staff took Plaintiff's new cane that had been given to him by Dr. Miller causing Plaintiff to fall. (*Ibid.*). No fractures were found on an x-ray conducted after the fall. (*Ibid.*). Plaintiff asked for a MRI, but the staff refused to provide one. (*Ibid.*).

Plaintiff contacted Rutgers' regional medical director and was scheduled for another visit with the orthopedic surgeon. The surgeon agreed with an unidentified neurologist's decision "that surgery would be [too] risky,"[3] and that the risk outweighed any benefit to Plaintiff. (*Id.* at 5). The orthopedic surgeon recommended Plaintiff be sent to a pain management specialist, but the BSP medical staff refused to do so. (*Ibid.*).

Plaintiff seeks $1,500,000 in damages, as well as a "full review of [Rutgers'] procedures and responsibilities . . . ."

---

[3] The complaint does not set forth the circumstances under which he was referred to a neurologist or when the consultation took place.

5

(*Ibid.*). He also asks for injunctive relief in the form of an order requiring defendants to immediately administer "proper pain management" and physical therapy. (*Ibid.*).

### III. STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading once as a matter of course twenty-one (21) days after serving the pleading or twenty-one (21) days "after a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. Pro. 15(a)(1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2).

Leave to amend a pleading may be denied where the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Ibid.* The Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Ibid.*

6

**IV. ANALYSIS**

**A. Denial of Adequate Medical Care**

Plaintiff has named Rutgers,[4] Dr. Briglia,[5] and Dr. Pomerantz, and John Doe Medical Staff from CRAF and BSP as defendants, alleging they violated his Eighth Amendment rights. (Amended Complaint at 1). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106. Deliberate indifference to a prisoner's serious medical needs may be found where the prison official (1) knows of a prisoner's

---

[4] Institutions and physicians who are under contract to provide medical services to inmates at a state prison act "under color of state law" for § 1983 purposes. *See West v. Atkins*, 487 U.S. 42, 54 (1988); *Walker v. Horn*, 385 F.3d 321, 332 (3d Cir. 2004). The Court presumes for purposes of this screening opinion only that Rutgers is not entitled to Eleventh Amendment immunity. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007) ("Whether a public university is entitled to Eleventh Amendment immunity is a fact-intensive review that calls for individualized determinations.") (citing *Kovats v. Rutgers, State Univ.*, 822 F.2d 1303 (3d Cir. 1987)).

[5] Plaintiff's complaint is silent as to Dr. Briglia's involvement. The complaint is therefore dismissed as to Dr. Briglia for failure to state a claim.

7

need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). "[A] prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." *Andrews v. Camden Ctny.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (citing *Peterson v. Davis*, 551 F. Supp. 137, 145 (D. Md. 1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984)).

In order for Rutgers, a government entity, to be liable under § 1983 for the actions or inactions of its employees, Plaintiff must allege that a Rutgers policy or custom caused the alleged constitutional violation; it cannot be liable under § 1983 for the acts of its employees under a theory of respondeat superior or vicarious liability. *Natale v. Camden Ctny. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty. Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Defreitas v. Montgomery Cnty. Corr. Facility*, 525 F. App'x 170, 177 (3d Cir. 2013) (listing three ways a policy or custom can be established). Plaintiff has not alleged there is a relevant Rutgers policy or custom that violated his constitutional rights, that Rutgers, without a formally

8

announced policy, violated federal law itself, or that Rutgers has failed to affirmatively act at all, even though the need for it "to take some action to control [of its agents was] so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that [Rutgers] can reasonably be said to have been deliberately indifferent to the need." *Defreitas*, 525 F. App'x at 177 (internal citations omitted). His request that a "full review" of Rutgers' policies and practices be conducted is not sufficient to allege liability. Plaintiff has therefore failed to sufficiently allege Rutgers was deliberately indifferent to his medical needs, and the Eighth Amendment claims against Rutgers must be dismissed.

Construing the complaint liberally, and giving Plaintiff the benefit of all reasonable inferences, the Court preliminarily finds that Plaintiff has sufficiently pled Eighth Amendment claims against the CRAF medical staff, Dr. Pomerantz, and the BSP staff. Plaintiff alleges the CRAF medical staff maliciously refused to provide him with his pain medication even after receiving his medical records from Dr. Miller. (Amended Complaint at 2). Plaintiff alleges Dr. Pomerantz ordered the BSP staff to seize Plaintiff's cane, which was part of his physical therapy and was necessary for him to walk. (*Id.* at 3-4). Plaintiff also alleges the BSP medical staff refused to send him to a pain management specialist as ordered by the orthopedic

9

surgeon, seized his cane, delayed access to his medication for three days, and delayed access to his prescribed physical therapy for a month. (*Id.* at 4-5). These facts together with their reasonable inferences permit these claims to proceed at this time. To the extent the complaint could be read to allege state medical malpractice and negligence claims against Defendants,[6] the Court will exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(a).

## B. Retaliation

Plaintiff has also sufficiently pled a retaliation claim against Dr. Pomerantz. "[R]etaliation for the exercise of constitutionally protected rights . . . is itself a violation of rights secured by the Constitution actionable under section 1983." *Miller v. Mitchell*, 598 F.3d 139, 117 (3d Cir. 2010) (internal quotation marks omitted). To sufficiently allege a retaliation claim, plaintiff must state facts that indicate "(1) he engaged in a constitutionally protected activity; (2) he

---

[6] Plaintiff's claims that he received the wrong medication and was denied a MRI are not sufficient to state an Eighth Amendment claim. He has, however, sufficiently alleged state negligence and medical malpractice claims. *See DeJesus v. Corr. Med. Servs., Inc.*, 574 F. App'x 66, 68-69 (3d Cir. 2014) ("[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." (internal quotation marks omitted)); *see also White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). ("[M]ere disagreements over medical judgment do not state Eighth Amendment claims.").

10

suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015). According to the complaint, Plaintiff told Dr. Pomerantz that if he did not provide Plaintiff with his medication, he "would be forced to contact . . . the medical services [patient] advocate ombudsman." (Amended Complaint at 3). Dr. Pomerantz thereafter filed an intuitional charge against Plaintiff for "faking an injury." (*Ibid.*). Construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, the Court preliminarily finds that Plaintiff has sufficiently pled a claim of retaliation against Dr. Pomerantz.

### C. Injunctive Relief

Plaintiff also seeks an order from this Court that would require Defendants to "administer proper pain management and physical therapy . . . ." (*Id.* at 5). Plaintiffs requesting prospective injunctive relief "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing

11

of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). A plaintiff must be able to show that a real and imminent harm will occur; a mere possibility of future harm will not suffice. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300-01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013).[7]

Plaintiff has alleged that he continues to be denied "proper pain management," and that as a result, he cannot participate in his required physical therapy. (Amended Complaint at 5). He state that an injunction is necessary "so I can fully [participate] in my prevention of progressive injury's [sic] and [extreme] pain." (*Ibid.*). Defendants shall be ordered to show cause within 14 days of service why an injunction should not issue. Fed. R. Civ. Pro. 65.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion to amend his complaint is granted, and the Clerk of the Court shall filed

---

[7] Plaintiff must ultimately demonstrate "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). All four elements must be satisfied in order to grant the injunction. *Roberts v. Ferman*, 448 F. App'x 254, 256 (3d Cir. 2011).

the amended complaint. The Eighth Amendment claims against Rutgers are dismissed without prejudice for failure to state a claim; however, the negligence and medical malpractice claims shall proceed. The Eighth Amendment, negligence, retaliation, and medical malpractice claims against Dr. Pomerantz shall proceed. The Eighth Amendment, negligence, and medical malpractice claims against John Does CRAF and BSP medical staffs shall proceed. All claims against Dr. Briglia are dismissed for failure to state a claim. Defendants shall show cause within 14 days of service why an injunction shall not issue. An appropriate order follows.

 

1/29/16
Date

ANNE E. THOMPSON
U.S. District Judge